**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS E. FANADY, | 1:08-cv-00963-OWW-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| MICHAEL S. EVANS, Warden | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented by Philip M. Brooks, Esq.

BACKGROUND

Following a jury trial in the California Superior Court for the County of Fresno, Petitioner was convicted of nine counts of committing a lewd act on a child (Cal. Pen. Code[1] §288(a)), two counts of oral copulation (§ 288a(c)(1)), one count of attempted sexual penetration (§§ 289(j), 664), and one count of an attempted lewd act on a child (§§ 288(a), 664). Petitioner was sentenced to an indeterminate term of seventy-five years to life. (3 CT at 636-640.)

The judgment was affirmed by the California Court of Appeal, Fifth Appellate District.) The California Supreme Court summarily denied review on April 11, 2007.

Petitioner filed the instant federal petition for writ of habeas corpus on July 9, 2008. (Court Doc. 1.) Respondent filed an answer to the petition on September 19, 2008, and Petitioner filed a

---

[1] All further references are to the California Penal Code unless otherwise indicated.

1

traverse on October 15, 2008.  (Court Docs. 16, 19.)

STATEMENT OF FACTS[2]

In 1995, W.V. encountered defendant when he was nine or ten years old. W.V. was at Woodward Park with family and friends. The first time he saw defendant, defendant exposed himself. Later that day, W.V. wandered off by himself and defendant followed him. Defendant talked to him and led him into the restroom. Defendant pulled down his shorts and asked W.V. if he wanted to touch defendant's penis. Defendant grabbed W.V.'s hand and put it on defendant's penis and moved W.V.'s hand back and forth. While doing this, defendant's other hand was on W.V.'s testicles. Defendant took off W.V.'s pants and touched W.V.'s penis. Defendant put his mouth on W.V.'s penis. Defendant stopped when someone entered the restroom. Defendant pulled up W.V.'s pants and his own pants and walked out. (Count 1-lewd and lascivious act of placing victim's hand on defendant's penis; count 2-lewd and lascivious act of rubbing victim's testicles; count 3-lewd and lascivious act of putting victim's penis in his mouth; count 4-oral copulation, an alternative count to count 3; these counts were charged under Pen.Code [footnote] § 288, subd. (a), except count 4, which comes under § 288a, subd. (c)(1).)

W.V.'s second encounter with defendant was in the summer of 1995. W.V. saw defendant walking and W.V. tried to hide. W.V. stayed with his parents for awhile and then went to play with his brother. Defendant found W.V. W.V.'s brother left. Defendant led W.V. into a hollowed-out place between some branches. Defendant massaged W.V.'s penis and testicles. He pulled down W.V.'s pants and felt his penis and testicles. Defendant put his mouth on W.V.'s penis. (Count 5-lewd and lascivious act of placing victim's penis in his mouth; count 6-oral copulation, an alternative count to count 5; count 7-rubbing victim's testicles; these charges were under § 288, subd. (a), except count 6, which comes under § 288a, subd. (c)(1).)

W.V. saw defendant at the park by the amphitheater in 1996. Defendant pulled down W.V.'s pants. Defendant felt W.V.'s testicles and then orally copulated him. Defendant masturbated until he ejaculated. He asked W.V. if he wanted a birthday gift. (Count 8-lewd and lascivious act under § 288, subd. (a).)

The last encounter W.V. had with defendant was in 1997. W.V. was at the park. Defendant walked W.V. to the restroom, expressing his feelings for him. In the restroom, defendant touched W.V.'s private parts over his clothes. The clothes came off and defendant kissed W.V. all over. Defendant pulled W.V. close and touched their penises together. He then orally copulated W.V. Defendant also attempted to put his finger in W.V.'s anus, but W.V. prevented him from doing this. (Count 9-lewd and lascivious act of pressing their exposed penises together; count 11-lewd and lascivious act of orally copulating victim; count 12-attempted sexual penetration when defendant attempted to put his finger in the victim's anus; these charges were under § 288, subd. (a), except count 12, which comes under §§ 264/289, subd. (j).)[3]

W.V. did not have the courage to tell anyone what happened until he learned of defendant's arrest in 2004 for incidents occurring in 2000 and 2004.

In 2000, D.P. was 11 years old and living with his mother in Fresno. Defendant was a local television broadcaster. D.P. saw defendant on television. On a televised newscast, defendant remarked he had not seen one of the new golden dollar coins that were in circulation. D.P. wanted to bring a coin to the station to give to defendant. D.P. and his mother drove to the television station to give the coin to

---

[2] The Court finds the Court of Appeal correctly summarized the facts in its January 23, 2007, opinion. See Unpublished Opinion, 2007 WL 155179.  Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

[3] Count 10 was dismissed.

1  defendant. Defendant came out to the reception area and D.P. gave him the coin. Defendant then took D.P. and his mother on a short tour of the station. Defendant gave D.P. some items from the station to
2  take home with him. He invited D.P. to come back to the station and have lunch with him.

3  D. P.'s mother made an appointment for D.P. to return to the station. She dropped D.P. off at the station. Defendant took D.P. out to lunch and brought him back to the station for a broadcast.
4  When they were finished, defendant drove D.P. home.

5  Defendant telephoned D. P., e-mailed him, and mailed him letters. He invited D.P. on a fishing trip at a location near his house. D. P.'s mother agreed to the fishing trip and on May 20, 2000,
6  defendant arrived at D.P.'s home to take him fishing.

7  D.P. and defendant fished. Defendant then asked D.P. if he had ever gone skinny-dipping. D.P. did not know what skinny-dipping was. Defendant described it to him. Defendant said to D. P., "let's
8  try it." D.P. agreed. D.P. and defendant took off their clothes and got into the water. Defendant put his arm around D.P. and glided D.P. through the water. D.P. felt defendant's chest touch his back. D.P.
9  also felt defendant's penis touch his lower back, "just above his crack." D.P. did not know if defendant's penis touched him intentionally or accidentally. D.P. got out of the water and said he was
10 not comfortable. When D.P. got out of the water, D.P. had an erection. Defendant noticed the erection and said to D.P. that he had a "stiffy." D.P. was embarrassed. Defendant also told D.P. that he had a
11 nice body. (Count 13, lewd and lascivious act, § 288, subd. (a).)D.P. and defendant got dressed and went farther down the river to a tree house defendant said he built with a boy named Jimmy (James C
12 .). Defendant told D.P. it was a tradition to "pee" off the side of the tree house, so D.P. and defendant urinated off the side of the tree house. Defendant also encouraged D.P. to call his mother and tell her he
13 was okay. D.P. called his mother.

14 D.P. and defendant then went to defendant's house. D.P. sat on the couch. Defendant went to his bathroom and took a shower because he had to get ready for an event. Defendant invited D.P. into
15 his bedroom. Defendant stood naked in the bathroom and D.P. could see him. Defendant came out and asked D.P. if he wanted to pick out a tie for him. D.P. picked out the tie. Defendant got dressed and
16 took D.P. home.
D.P. told his mother what happened approximately three or four weeks afterwards. His mother
17 reported the incident to the police.

18 On May 16, 2004, 10-year-old Jay G. was at Woodward Park with his friend Stephen and his cousin Daniel. The boys were looking for crawdads and had separated themselves from the adults they
19 came to the park with. Defendant approached the boys and asked Stephen how old he was. Defendant had a dog and asked the boys if they wanted to pet his dog. Daniel and Stephen petted the dog and
20 defendant took pictures of them. Defendant then showed them their pictures as well as some "nasty" pictures. Defendant put his hand on the back of Jay's neck and started to lead him away. Daniel told
21 Jay to come with them. The boys left because they thought defendant was weird. Defendant ran off. (Concerning Jay G.: count 14-attempted lewd act under §§ 664/288, subd, (a); count 15-misdemeanor
22 annoying or molesting a minor under § 647.6.[4]

23 The boys told the adults in their group what had happened. Fred Venglarcik was one of the adults. He and another individual went to look for defendant. Venglarcik saw defendant and followed
24 him. Venglarcik asked to see defendant's cell phone. Defendant said he did not have a cell phone and accused Venglarcik of harassing him. Defendant said he was going to call the police. One of the women
25 told defendant to stay there because the police were on the way. Defendant walked away. Venglarcik followed him and could see defendant making movements with his hands. Defendant went into the

---

[4] Prior to trial, defendant pleaded guilty to two counts of annoying or molesting a minor regarding Daniel and Stephen.

bathroom. Venglarcik heard the toilet flushing in the bathroom.

Police officers arrived. Defendant was in possession of a camera and had his dog with him. Defendant said he had not done anything wrong and was not taking pictures. Police officer Kenneth Gong worked in the computer crime area. He analyzed the camera seized from defendant. At first, it appeared the camera was blank. After utilizing other computer software, Gong was able to retrieve digital images from the camera. In addition, Gong retrieved pictures of children at the park and "kiddie porn" from defendant's laptop computer that was seized from his residence.

Clinical psychologist Randall Robinson testified regarding child sexual abuse accommodation syndrome. He said that oftentimes children do not report child sexual abuse, and it is quite unusual for boys to disclose abuse.

### Other Incidents

In addition to the evidence regarding the counts before the jury, the court allowed numerous witnesses to testify to prior incidents involving defendant. One boy reported that in December of 2003 he was walking to the park with a friend. Defendant asked them if they needed to go to the bathroom. Defendant said to them that when he woke up that morning his penis was sticking straight out. On another occasion, in March of 2004, defendant started playing with his penis in front of three young boys in the bathroom at Woodward Park.[5]

Two boys testified that they were at Woodward Park when defendant approached them and that he dropped pornographic pictures in front of them for them to see. They left because they were scared; defendant followed.

James C. lived down the street from defendant. James testified to numerous instances when defendant would touch him and orally copulate him. They also engaged in acts of masturbation and watched pornography together. Defendant bought James toys.

Two boys testified that they saw defendant at Woodward Park. Defendant was riding his bike and was exposing his penis to the boys.

### Defense

Defendant testified on his own behalf. He admitted that he has an unnatural interest in boys. He agreed with many of the accusations against him. He said that all of the accusations by James were false. He testified that he only engaged in oral copulation with W.V. on three occasions, not four. He said that most of what D.P. testified to was true except his penis did not touch D. P.'s back and he did not walk around naked in front of D.P. He had no sexual intent or interest in D.P. He also denied masturbating in front of the three boys in the restroom at Woodward Park; he was in fact shaking or wiggling his penis to get their attention. He said that he touched Jay while trying to lead him away from the water, but there was nothing sexual in the touching.

(Lodged Doc. No. 3, Unpublished Opinion, 2007 WL 155179, at *1-*4.)

///

///

---

[5] Prior to trial, defendant pleaded guilty to three additional counts of annoying or molesting a minor for these incidents.

4

DISCUSSION

A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.   Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v.

Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.   Instructional Error

Petitioner contends that his due process rights were violated when the trial court instructed the jury with CALJIC Nos. 2.03 [a false or misleading statement made by the defendant prior to trial may be viewed as showing consciousness of guilt], 2.06 [consciousness of guilt could be inferred by concealing evidence], and 2.52 [defendant's flight could show consciousness of guilt], because such instructions "violated the mandate of the United States Supreme Court that there be absolute impartiality as between defense and prosecution with regard to jury instructions."

The Court of Appeal rejected Petitioner's claim citing to the California Supreme Court's decision in People v. Boyette, 29 Cal.4th 381, 438-439 (2002), which upheld the very same instructions challenged in the instant petition. The cited portion of the Boyette decision states:

> "[E]ach of [these] instructions made clear to the jury that certain types of deceptive or evasive behavior on a defendant's part could indicate consciousness of guilt, while also clarifying that such activity was not of itself sufficient to prove a defendant's guilt, and allowing the jury to determine the weight and significance assigned to such behavior. The cautionary nature of the instructions benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory. [Citations.] We therefore conclude that

6

these consciousness-of-guilt instructions did not improperly endorse the prosecution's theory or lessen its burden of proof" and thus were not improper pinpoint instructions.

Boyette, at 438-439 (quoting People v. Jackson, 13 Cal.4th 1164, 1224 (1996).)

The challenged instructions as given to the jury in the instant case stated the following:

CALJIC No. 2.03:

    If you find that before this trial the defendant made a willfully false or deliberately misleading statement concerning the crimes for which he is now being tried, you may consider that statement as a circumstance tending to prove a consciousness of guilt. However, that conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide.

(CT 516.)

CALJIC No. 2.06:

    If you find that the defendant attempted to suppress evidence against himself in any manner, such as by destroying evidence, this attempt may be considered by you as a circumstance tending to show consciousness of guilt. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide.

(CT 517.)

CALJIC No. 2.52:

    The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether the defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide.

(CT 532.)

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See id. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982) (*citing* Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Furthermore, even if it is determined that the instruction violated the petitioner's right to

due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). <u>See</u> <u>Hanna v. Riveland</u>, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." <u>Id</u>. With this standard in mind, the court will now examine the challenged instructions.

       The challenged instructions given in this case were nothing more than the standard consciousness-of-guilt instructions. All of the instructions were properly phrased in permissive, not mandatory terms, as the jury was instructed jury that it may, but was not required to, infer consciousness of guilt from false statements and/or suppressing evidence, or guilt by evidence of flight by defendant. In addition, the jury was specifically instructed that consciousness-of-guilt or guilt evidence was not sufficient in itself to support a finding of guilt, and any weight to give to such evidence was the exclusive province of the jury. Moreover, the trial court did not single out any particular testimony by defendant and the determination of whether the jury found such conscious-of-guilt evidence was left open for the jury to determine. Further, the jury was instructed with CALJIC Nos. 2.20 ["[i]n determining the believability of a witness you may consider anything that has a tendency reasonably to prove or disprove the truthfulness of the testimony of the witness . . ." ], 2.21.2 ["[a] witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point . . ."], 2.24 ["[e]vidence of the character of a witness for honesty or truthfulness may be considered in determining his believability."], and 2.90 ["a] defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption upon the People the burden of proving him guilty beyond a reasonable doubt."]. (CT 521, 524, 526, 538.) Also, "[i]t is clear that criminal defendants are not entitled to a false aura of veracity when they take the stand," and "when accused elects to become a witness and testify in his own behalf, 'his credibility may be impeached, his

8

testimony may be assailed, and is to be weighed as that of any other witness.'" <u>United States v. Portillo</u>, 633 F.3d 1313, 1322 (9th Cir. 1980) (quoting <u>Reagan v. United States</u>, 157 U.S. 301, 305 (1895)); <u>see</u> <u>also</u> <u>Turner v. Marshall</u>, 63 F.3d 807, 819-820 (9th Cir. 1995) (upholding constitutionality of CALJIC No. 2.03 stating "[s]o long as the instruction does not state that inconsistent statements constitute evidence of guilt, but merely states that the jury may consider them as indicating a consciousness of guilt, the instruction would not violate constitutional rights.), overruled on other grounds in <u>Tolbert v. Page</u>, 182 F.3d 677 (9th Cir. 1999). In <u>Reagan</u>, the Supreme Court quoted with approval instructions that specifically advised a jury to consider that defendant's "demeanor and conduct upon the witness stand and *during the trial*." <u>Id</u>. at 308 (emphasis added). Viewed as a whole, it cannot be said that the consciousness-of-guilt instructions violated Petitioner's constitutional right to impartiality, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

In any event, even if it was error for the trial court to give the consciousness-of-guilt instructions, Petitioner has failed to establish that the challenged instructions had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. at 637. As explained in the statement of facts above, the evidence against Petitioner was strong and generally uncontroverted. Without the benefit of the consciousness-of-guilt instructions, it is very likely that the jury would have applied its common sense to draw a negative inference against Petitioner based on the facts that he fled, destroyed evidence, and made false statements. The challenged instructions arguably benefitted Petitioner by instructing the jury that the consciousness of guilt evidence was not in itself sufficient to warrant a finding of guilt. Further, given the fact that Petitioner himself admitted wrongdoing during his testimony at trial (see RT 3036-3128), it is highly improbable the challenged instructions had a "substantial and injurious effect on the jury's verdict."

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court

Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

   IT IS SO ORDERED.

   Dated:   **December 11, 2008**                    **/s/ Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE